**Federal Defenders OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

September 27, 2018

**By ECF**
Hon. Jesse M. Furman
Judge, Southern District of New York
40 Foley Square
New York, New York 10007

**Re:** <u>United States v. Shmuel Zarzar,</u> 18 Cr. 177 (JMF)

Hon. Judge Furman,

For the reasons stated in the recommendation section of the pre-sentence report and for those stated in this sentencing submission, we write to request the Court sentence Mr. Zarzar to the mandatory minimum sentence of 5 years of incarceration.

Mr. Zarzar's participation in the instant conduct is completely out-of-character. He has no history of sex offenses, no history of possessing child pornography, and, according to the Dr. Kate Termini, is not a pedophile. *See* Report of Dr. Termini, attached as Exhibit A. She notes that Mr. Zarzar would not have engaged in the offense conduct ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mr. Zarzar is a different person and does not pose a danger to the community. The safety of the community would be furthered through ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as little prison as possible. ▇▇▇▇▇▇▇▇▇ supervision will provided by both the Department of Probation and his registration as a sex offender will further assure ▇▇▇▇▇▇▇▇▇▇ supervision.

**Mr. Zarzar's personal background**

Shmuel Zarzar grew up the oldest of seven siblings in the Midwood neighborhood of Brooklyn. His father, Ofer, worked in an electronics shop, while his mother, Hannah, stayed at home to care for Shmuel and, later, his brothers and sisters. His parents always put food on the table, but could not provide much more. Shmuel's family lived in an Orthodox Jewish community, and he grew up attending services and Yeshiva schools.

Hon. Jesse M. Furman                                             September 27, 2018
Judge, Southern District of New York                             Page 2

Re:   <u>United States v. Shmuel Zarzar,</u> 18 Cr. 177 (JMF)

     Beginning around seven years old, Shmuel Zarzar suffered extensive physical abuse at the hands of his father. There is a family history of mental illness and abusiveness on his father's side of the family. The abuse was almost daily. Looking back, he believes mental health issues and marital problems fueled his father's cruel behavior. Any time Shmuel would earn a bad grade on a test or have a simple disagreement with his parents, Ofer would punch him in the chest with full force or whip Shmuel with a belt buckle. Ofer also abused Shmuel's mother, brother, and younger sister.

     Reeling from maltreatment at home, Shmuel turned inward, becoming quiet and passive. As such, he experienced significant bullying in elementary school. If anything, his teachers seem to have made the problem worse. Shmuel remembers their reluctance to intervene to address the incidents, and sometimes, their complicity. Shmuel's most humiliating memory of school came in second grade, when his teacher hung him from the blackboard in toy handcuffs in front of his classmates. Then, in 1995, a drunk driver in a 15-passenger van hit 7-year-old Shmuel while he was waiting for a school bus. Miraculously, Shmuel suffered only scratches and minor injuries, but recalls the event as yet another traumatic childhood experience, one which his parents did not ever discuss.

     Without refuge at home or in school, Shmuel hardened as he grew older. He fought back when Ofer reached for a belt. By 12, he was strong enough to protect his mother and siblings and his father remitted. Without support from his parents to help him work through challenges at school, he acted out at school as a cry for help. Once a promising student who loved to read – despite his disciplinary issues he took advanced classes and regularly made the honor roll – Shmuel ended up at a DOE-contracted reform school in Canton, Massachusetts: The Judge Rotenberg Educational Center.

     The Judge Rotenberg Educational Center was strict. It housed students with developmental disabilities, behavioral problems, and referrals from the juvenile justice system. In recent years, it has drawn opprobrium for using electric shock therapy on students on the autism spectrum.[1] Staff required entering students to walk to and from

---

[1] *See* Torture, not Treatment, Electric Shock and Long-term Restraint in the United States on Children and Adults with Disabilities at the Judge Rotenberg Center, *available at* http://abcnews.go.com/images/Nightline/HT_US_Report_4_30_10_100630.pdf

Hon. Jesse M. Furman  September 27, 2018
Judge, Southern District of New York  Page 3

Re:   United States v. Shmuel Zarzar, 18 Cr. 177 (JMF)

classes in shackles for their first three months at the institution, [2] and the threat of juvenile detention pervaded as the sole alternative to respectful behavior. Shmuel felt he could sink no lower. He graduated high school and attended Empire State College for a little more than a year. He then returned to Brooklyn and began a career as an electrician.

Mr. Zarzar was no stranger to manual labor – from age twelve until he enrolled at Judge Rotenberg, he worked up to six hours after school to earn money for his family at a catering business, a surveillance company, and by helping his grandfather, a contractor, do electrical work. He developed a reliable professional reputation and held manager positions on various electrical crews. In his spare time, he stayed active by volunteering with chevra kadisha, a Jewish tradition of preparing bodies for burial, as an EMT for Hatzolah, a volunteer Jewish ambulance service, and as an auxiliary policeman for the NYPD.

At age 22, he fell in love with a woman, Shelly Aaron, from his religious community and landed a well-paying job with Accurate Electric. At 24, he earned admission to IBEW Local 3, which promised to double his earnings. He had developed a better relationship with his parents, both of whom had recently obtained better-paying jobs with the Department of Education. He was making plans to marry his girlfriend. On the brink of adulthood, Shmuel was poised to overcome his difficult childhood and build a productive and fulfilling future.

And then, in a single instant, everything changed. On May 21, 2012 Shmuel made his way to a morning job on the west side of Manhattan, a street sweeper vehicle hit his car in an intersection leaving Shmuel with herniated and bulged discs in his back, severe injuries to his neck, right knee, and both shoulders, and chronic knee and spinal pain. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████
█████████████████████████████████████████████████

---

[2] *See id.* at 9 (details on shackling).

Hon. Jesse M. Furman  September 27, 2018
Judge, Southern District of New York  Page 4

Re:   United States v. Shmuel Zarzar, 18 Cr. 177 (JMF)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

In those years, Mr. Zarzar never engaged in conduct remotely resembling the instant charges.

In August 2017, Mr. Zarzar saw Ms. Aaron for the first time since their separation. She was with another man. The glimpse of his old life before his eyes devastated Shmuel. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Sober and cogent, Mr. Zarzar writes to the Court:

*I am sorry for my conduct.* ▓▓▓▓▓▓▓ *I can only imagine how much of an impact this situation has had on the girl to whom I reached out and with whom I interacted improperly. Looking back now, I can't believe it was me who used such language and did such things. I don't consider myself to be that kind of person and for years had the same girlfriend whom I treated with love and respect. When I look back on the chats from my discovery, I feel like that person was someone else and I know that I have nobody to*

---

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Hon. Jesse M. Furman                                             September 27, 2018
Judge, Southern District of New York                             Page 5

Re:   United States v. Shmuel Zarzar, 18 Cr. 177 (JMF)

*blame for having hurt someone and for being in jail.* See Ex. D, Letter from Shmual Zarzar, at 1.

Letters from Shmuel's loved ones depict a generous, energetic young man ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Exhibit E, Letters of Support Shmuel's brothers describe occasions when he used his skills in construction and electrical work to remodel their restaurants and homes. *Id* at 5-8. His 11-year-old sister, Y▮▮▮▮, tells of a supportive presence in her life ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and her hope that he will get the help he needs. *Id* at 14.

Shmuel's aunt, Camelia Sheinkopf, paints a poignant picture of Shmuel's efforts to overcome his father's abuse and become a valued contributor to their community, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. E at 11-13. And his mother echoes all these sentiments while detailing shocking changes she witnessed in her son's behavior:

*"He was never the same. He was always in pain, crying, unable to bear the pain. He never could sleep. His appetite was gone and he was a skeleton of his former self...*▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Ex. E at 2-3.

**Offense Conduct**

As explained in the attached report by Dr. Termini, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he would not have engaged in the conduct. *See also* Letters of Support, attached as Exhibit E. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ His reasoning abilities were severely clouded. Although he had been told the victim's true age, he was shocked at her actual appearance in the photograph shown to him at the time of his arrest. He acknowledges the seriousness of the offense, and is ashamed for having for his communications with the victim (and agent who pretended to be the victim).

Mr. Zarzar has no history of preying on children or of possessing child pornography. Results of his ABEL testing demonstrate that he is not a pedophile. His risk of reoffending is quite low.

**Guidelines Calculation**

Mr. Zarzar has no objection to the guidelines calculation as stated in the pre-sentence report. That said, the court should consider the long standing lack of deference

Hon. Jesse M. Furman  September 27, 2018
Judge, Southern District of New York  Page 6

Re:  United States v. Shmuel Zarzar, 18 Cr. 177 (JMF)

accorded to § 2G2.2 of the United States Sentencing Guidelines, and the Second Circuit's recognition that it does not merit deference and will not guide the Court in determining a just sentence in this case.

## ARGUMENT

### The Court should sentence Mr. Zarzar to 5 years in custody.

A district court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007), and it is the court's own independent review of the sentencing factors in § 3553(a) that determines the appropriate sentence. *United States v. Cavers*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "In this way, the district court reaches an informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing." *Id.* (citing § 3553(a)). Parsimony of sentence remains the statutory lodestar of sentencing.

**Flawed child pornography guidelines recommend unduly harsh sentences.**

The Second Circuit in United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017), noted that "since the Commission has effectively disavowed § 2G2.2, it should be clearer to a district court than when we decided Dorvee that this Guideline 'can easily generate unreasonable results.'" Jenkins, 854 F.3d at 190 (quoting Dorvee, 616 F.3d at 188). [4]

This Court should therefore not anchor its sentence to the disavowed and disapproved Guideline, § 2G2.2, in any way. It should instead weigh the other § 3553(a) factors to arrive at the parsimonious sentence.

### The remaining § 3553(a) factors counsel a sentence of 5 years.

Guidelines range aside, we agree with Probation's request for a downward variance, and that the remaining § 3553(a) factors, taken together, counsel a sentence of five years.

---

[4] In *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010), the Second Circuit noted that the child pornography guideline is "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires."

6

Hon. Jesse M. Furman  September 27, 2018
Judge, Southern District of New York  Page 7

Re:  United States v. Shmuel Zarzar, 18 Cr. 177 (JMF)

### 1.1 The need to provide Mr. Zarzar with appropriate treatment



There will be two crucial components to Mr. Zarzar's rehabilitation: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ consistent employment. A sentence of more than five years in prison will hinder both. Mr. Zarzar still maintains connections with some of his old supervisors from when he did electrical work, and he hopes to use them to obtain employment once he arrives at a halfway house. His former employer, Tzvi Schwartz, describes Shmuel's "[can do] attitude" and "tremendous effort" when they worked together. He notes that upon Mr. Zarzar's release, he "would be more than happy to do whatever I can to help him find a good job in the electrical field." See Ex. G, Letter from Tzvi Schwartz. Every additional month Mr. Zarzar is out of the community will make it harder for him to maintain connections like that with Mr. Schwartz. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Given Mr. Zarzar's post-arrest conduct, there is no doubt ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As Dr. Termini describes from a visit earlier this month, he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Exhibit B, Dr. Termini report of September 21, 2018. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He has taken advantage of employment opportunities and volunteered to counsel inmates contemplating suicide.

Hon. Jesse M. Furman                                                                September 27, 2018
Judge, Southern District of New York                                                Page 8

Re:     United States v. Shmuel Zarzar, 18 Cr. 177 (JMF)

See Exhibit F, MCC Program Participation Records. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### 1.2   Mr. Zarzar's history and characteristics

We have discussed Mr. Zarzar's history and characteristics at length. ▓▓▓▓ he is a decent person who would not do anything resembling the offense conduct. He is a counseled many others in their times of need. And, of course, his criminal record ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### 1.3   The nature and circumstances of the offense

The conduct at issue is serious but as the victim's father notes, his daughter was not harmed. Again, Mr. Zarzar's conduct is aberrant in nature and ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ With the help of social workers from our office, (Ex. C, Letter from Federal Defenders Social Worker Angel Bosques), and the supervision from probation as well as the reporting on SORNA, he will have ample support. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### 1.4   Specific deterrence and incapacitation

Quite simply, Mr. Zarzar is no threat to break the law again. He is certainly no threat to again act out against a minor. His growing degree of self-awareness and willingness to confront his shortcomings is promising and he now keenly understands that there are serious *legal* consequences to actions ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

It is important to understand why someone like Mr. Zarzar —who has lived a generally decent life—turned to such conduct in the first place. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ it is also significant that as a result of his conviction Mr. Zarzar will be required to register as a sex offender. That harsh collateral consequence—and overall humiliating experience—is another factor that contributes to his being specifically deterred. In short, he has more than learned his

Hon. Jesse M. Furman                                           September 27, 2018
Judge, Southern District of New York                           Page 9

Re:   <u>United States v. Shmuel Zarzar,</u> 18 Cr. 177 (JMF)

lesson, and does not need to be incarcerated beyond the statutory minimum of 5 years to make the point any clearer.

### 1.5 General deterrence

The question of the role general deterrence should play in sentencing is a complicated one, to say the least. Deterrence is, after all, "a phenomenon that is notoriously difficult (and perhaps impossible) to measure." *United States v. Brady*, No. 02 CR 1043(JG), 2004 WL 86414, at *9 (E.D.N.Y. Jan 20, 2004). Evidence-based studies support the conclusion that it is the certainty of *apprehension* rather than the severity of the ensuing legal *punishment* that more effectively deters crime. *See, e.g.*, Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 202 (2013) (reviewing empirical deterrence studies and their attendant literature). Mr. Zarzar's apprehension, felony conviction, and compulsory registration as a sex offender by themselves send a strong message to others who might be tempted to possess child pornography.

In any event, Mr. Zarzar has contributed much more than his fair share to general deterrence. Due to the small, insular nature of Mr. Zarzar's Orthodox Jewish community, his arrest he was subject to a kind of public shaming that most defendants charged with his offense never experience. His community has gotten the message that child pornography and related offenses will not be tolerated, and the Court accordingly should determine his instance of apprehension has achieved general deterrence, as the academic consensus on deterrence suggests.

### Conclusion

For all these reasons the court should impose a sentence of 5 years in custody followed by 5 years of supervised release.

                                        Respectfully submitted,

                                        /s/_____
                                        Sabrina Shroff/ Annalisa Mirón
                                        Ass't Federal Defenders