

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 3, 2018

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re: **United States v. Shmuel Zarzar**, 18 Cr. 177 (JMF)

Dear Judge Furman:

    The defendant in this case, Shmuel Zarzar, is scheduled to be sentenced on October 10, 2018 at 3:30 p.m., having pled guilty to attempted receipt of child pornography. The Government respectfully submits this letter in advance of the defendant's sentencing.

    Pursuant to a plea agreement between the parties, the defendant is subject to a mandatory minimum sentence of five years' imprisonment and the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range is 108 to 135 months' imprisonment. For the reasons set forth below, the Government submits that a sentence above the mandatory minimum, but below the Guidelines range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **A. Offense Conduct**

    The defendant initially met a 12-year old girl (the "Victim") while walking his dog near where the Victim attended school. (PSR ¶¶ 5, 17.) He then initiated a text message conversation with the Victim, which he continued over the course of two months first with the Victim and then with an undercover official who assumed the identity of the Victim. (PSR ¶ 5.) Despite knowing that the Victim was a minor, the defendant engaged in increasingly suggestive exchanges with the Victim.

    The defendant initially informed the Victim that she was "really cute" and discussed the prospect of the Victim walking his dog. The Victim explained to the defendant that her mother had told her not to speak to or to take jobs from strangers, to which the defendant responded, in part, "now is as good a time as any to start" because "U will have the opportunity to have a lot of fun" and "do things u might not want to do without having to worry about people judging you," including "a thing or 2 u want to do but don't because ur scared of what people will say or do if they knew." (PSR ¶ 5.)

The defendant also repeatedly asked that the Victim meet with him. When the Victim failed to confirm a meeting time and place, the defendant stated that he had gone to a street near where the Victim attends school in order to see the Victim. (PSR ¶ 5.)

After the Victim's parents learned of these text messages and notified law enforcement, an undercover agent (the "UC") assumed the Victim's identity and began to communicate with the defendant from the Victim's cellphone. (PSR ¶ 6.) The UC stated to the defendant that the UC, acting as the Victim, was 12 years old. (PSR ¶ 7.) The UC and defendant then exchanged a series of messages, voice recordings, and photographs over the course of approximately a month-long period. (PSR ¶ 6.)

On January 22, 2018, the defendant sent text messages to the Victim's cellphone asking "what r u wearing," to which the UC responded, "[a] shirt and underwear" and "I'm basically naked." The defendant later responded, in part, "I want u to send me a pic as u r now" and that "if were together eventually were gna see each other naked anyways." (PSR ¶ 8.) The next day, on January 23, 2018, the defendant again asked for a "full body pic" and stated to the UC, who was assuming the victim's identity, that "ur Gna be in such trouble if u go to sleep without sending me th3 pic." (PSR ¶ 9.)

A few days later, the defendant informed the Victim that he would provide an additional cellphone for their communications, that he had placed the cellphone in a shul near the Victim's school, and that the Victim should retrieve it. (PSR ¶ 10.) On the same day, law enforcement officials observed and took surveillance photographs of the defendant standing near the shul and the Victim's school for several hours. (PSR ¶ 10.)

The defendant also repeatedly asked the UC, who had assumed the Victim's identity, to provide him with the Victim's home address. (PSR ¶ 11.) When the UC did not disclose this information, the defendant stated that he had searched online, had found the Victim's home address, and that he would leave the cellphone outside of the Victim's home that night. (PSR ¶ 11.)

When the undercover official, acting as the Victim, finally agreed to meet the defendant, the defendant stated, in substance and in part, the following over text message conversations: "Oh my gosh I cannot wait to give you an orgasm oh my God," "I cannot wait to give you one and to be the first person to give you one is blowing my mind," and "it's going to be the most amazing experience for both of us and I cannot wait." (PSR ¶ 12.)

On January 31, 2018, after their meeting did not take place, the UC and the defendant arranged to meet the following day in Manhattan. (PSR ¶ 13.) Law enforcement officials who had been surveilling the defendant observed the defendant standing near the pre-arranged meeting location. (PSR ¶ 14.) The defendant was arrested shortly thereafter. (PSR ¶ 14.)

### B. Procedural History

On February 28, 2018, the defendant was charged by indictment with one count of attempted enticement of a minor, in violation of Title 18, United States Code, Section 2422. On June 28, 2018, after plea discussions which included the defendant's disclosure of certain mitigating circumstances, the Government filed a Superseding Information charging the defendant with one count of attempted possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2), (b)(1) and 2, to which the defendant pled guilty. (PSR ¶ 2.)

The parties' plea agreement calculated that, based on a base offense level of 31 and criminal history category I, the defendant's applicable Guidelines range is 108 to 135 months' imprisonment. The Probation Department agrees with this calculation, but recommends that the defendant be granted a below-Guidelines sentence of 60 months' imprisonment.

On September 27, 2018, the defendant submitted a sentencing memorandum and accompanying exhibits, and requested that he be sentenced to the mandatory minimum of 60 months' imprisonment. The defendant argues *inter alia* that the Guidelines for child pornography possession cases are unreasonably high and overstate his culpability in this case, that the defendant's criminal conduct was merely the result of his substance abuse issues which he has now addressed, and that the mandatory minimum in this case—60 months' imprisonment—would be sufficient because the defendant has demonstrated his rehabilitation and low risk of re-offense.

### C. Discussion

#### 1. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. Discussion

A significant term of imprisonment is appropriate here to reflect the seriousness of the defendant's offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to this defendant and other similarly situated individuals. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). As the defendant has noted in his submission, there are certain mitigating factors in his case, including the lack of evidence that the defendant previously engaged in similar conduct, that he was abused as a minor, and that, prior to his substance abuse issues, he was a law-abiding citizen who held steady employment and volunteered in his community. All of these considerations weigh in favor of a sentence that is below the Guidelines range of 108 to 135 months' imprisonment, but that is above the mandatory minimum sentence.

*First*, a sentence higher than the mandatory minimum is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). The offense to which the defendant pleaded guilty is an incredibly serious one. As the Supreme Court has noted, "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). In particular, "child pornography crimes at their core demand the sexual exploitation and abuse of children." *United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013). Here, the defendant repeatedly asked the UC, who had assumed the identity of the Victim, for photographs in which the Victim would be "basically naked" because they were "gna see each other naked anyways." (PSR ¶ 8.) The defendant directed the Victim to lift up her shirt, so that he could see her belly. When the UC refused, the defendant determinedly continued to request these photographs, stating that she would "be in such trouble if u go to sleep without sending me the pic." (PSR ¶ 9.)

The defendant's conduct went beyond his attempts to possess child pornography— he discussed engaging in sexual acts with a twelve-year-old child who lived in his neighborhood — and he took concrete actions toward his goals. The defendant persistently told the Victim, and later the UC, that he wanted to meet in person. Despite the Victim's and UC's refusals to meet, the defendant went to the Victim's school to wait for her, including on at least one occasion, when he was observed by law enforcement officials waiting on a street corner outside of the Victim's school for several hours. The defendant attempted to give the Victim a phone so that the Victim's parents would not discover their communications. And, when the defendant did not see the Victim near the Victim's school, he then asked to provide the Victim with a cellphone at the Victim's home. Despite the UC's refusal to disclose the Victim's home address, the defendant searched

online, found the Victim's address, and stated that he would come to the Victim's home. When the Victim finally agreed to meet with the defendant, he went on to describe the explicit sexual interactions that he wanted to have and expressed pleasure at the thought that he would be the first individual to engage in such conduct with the Victim. He then traveled from Brooklyn to Manhattan in order to meet with the Victim, presumably to engage in the sexual activities that he had described only a few days earlier.

The defendant does not dispute that, over a two month period, he believed he was communicating with a minor. Despite being aware of the Victim's age—and therefore that his conduct was a serious crime—he was not deterred from forging ahead. A lengthy prison sentence, therefore, is necessary in light of the defendant's serious conduct and to promote respect for the law and provide just punishment.

*Second*, a substantial sentence is necessary to afford adequate deterrence to the defendant and others similarly situated. *See* 18 U.S.C. § 3553(a)(2)(B). Certain features of the type of crime committed by the defendant call for a particularly strong sentence. These crimes have devastating, lasting effects on minor victims—individuals who are likely to be especially vulnerable and subject to exploitation. *See Reingold*, 731 F.3d at 216 (noting that children are "seriously harmed—physically, emotionally, and mentally—in the process of producing such [*i.e.*, child] pornography"). Here, although law enforcement intervened before the defendant had any sexual contact with the Victim, he posed a significant threat to a vulnerable minor, who he stalked by waiting outside of her school for several hours and who he knew lived in his neighborhood.

Relatedly, such crimes are very difficult to detect—minor victims may be embarrassed or hesitant to discuss their perpetrator's conduct with an authority figure. This case supplies an excellent example: law enforcement were only notified about the defendant's conduct when the Victim's parents learned about the Victim's conversations with the defendant. Indeed, the defendant himself encouraged the Victim to take actions to conceal his conduct, by encouraging her to disobey her parents' instructions to avoid strangers and by suggesting that the Victim use a different phone to communicate with him.

Defense counsel highlights several factors in support of judicial leniency, including that there is no evidence that the defendant has ever engaged in prior similar conduct, the defendant was abused during his own childhood, the defendant was addicted to opiates during the time of his offense which affected his judgment and to which he is no longer addicted, and, according to a defense psychologist, he does not qualify for a diagnosis of pedophilia and his risk of recidivism is purportedly low.

These are appropriate considerations, in the Government's view, and are factors that cumulatively support a below-Guidelines sentence. Of particular importance, the Government notes that the defendant has not previously been charged with any similar crimes and the Government does not have any evidence at this time that the defendant has engaged in any other attempts to entice minors or possess child pornography, including based on the Government's review of the defendant's email account which was conducted pursuant to a judicially-authorized search warrant. The Government also acknowledges the defendant's difficult upbringing,

including his statements concerning his abuse as a child, and that before the defendant became addicted to narcotics he appears to have been a law-abiding citizen who held steady employment and volunteered in his community.

However, none of these factors warrants sentencing the defendant to the mandatory minimum of sixty months' imprisonment. The defendant's decision to abuse opiates does not justify his conduct or render him any less culpable. The actions that he took endangered the welfare of a real twelve year old child who lived in his neighborhood. The defendant knew where the child went to school, he stalked the Victim on at least one occasion by waiting outside of the Victim's school, which was observed by law enforcement officials, and he took steps to determine where the Victim lived. The defendant attempted to have the Victim send pornographic images to him, as he admitted in his plea allocution, and he discussed sexual activities that he intended to engage in with the Victim, arranged a meeting, and then went to that location.

The defendant's alleged conduct spanned a period of roughly two months. His actions were not the product of rash decision making or a momentary lapse in judgment—they constituted a sustained pattern of conduct during which time he was capable enough to procure a cellphone, devise a plan to provide the Victim with that cellphone, and research and find the Victim's home address. Throughout this period, the defendant never disengaged from his conversations with the Victim or recognized the inappropriateness of his actions despite being aware that the Victim was only twelve years old. The defendant's abuse of narcotics does not mean that the defendant should be granted judicial leniency.

In addition, although the Government acknowledges the defendant's strides with respect to his substance abuse issues while incarcerated, there is nothing in the defendant's conduct, prior to the instant offense, that indicates he would refrain from returning to substance abuse. For the last five years, the defendant has struggled with addiction and, as a result, has been arrested on four occasions for narcotic offenses. During that period, the defendant has cycled through medical treatment, returning to a state of self-medicating through drug abuse. In 2013, the defendant recognized the seriousness of his substance abuse issues, attempted to detox on his own, and remained abstinent from substances for nearly six months. (Def. Exhibit A at 4.) He then relapsed and, by 2014, had increased his intake of opiates. (*Id*., PSR ¶¶ 66-67.) When the defendant's insurance later expired, instead of attempting to wean himself off of his addiction, he then began using heroin. (*Id*.)

The defendant further claims that he would never return to conduct similar to the instant offense and points to Dr. Termini's psychological report which concluded that the defendant was not a pedophile and "is not sexually attracted to minors aged 13 or younger." (*Id.* at 14.) However, Dr. Termini further concluded that the defendant is not a pedophile because he "has a primary attraction to females aged 14 to 17 followed by adult females, which is a normal profile for a heterosexual male and may be reflective of the age group that he is emotionally best able to identify with." (*Id*.) Notwithstanding Dr. Termini's conclusion that the defendant has a "normal profile for a heterosexual male," the Government is troubled by the fact that the defendant admitted that he is primarily attracted to 14 to 17 year olds and that he, therefore, might be susceptible to acting on those attractions.

In sum, the defendant's personal circumstances and history, while relevant and suggestive that a below-Guidelines sentence would be appropriate, do not justify his own exploitation of a minor or lessen the seriousness of his conduct. The defendant did not previously take responsibility for the danger he presented to others when he abused narcotics. While the Government hopes the defendant is able to make a change in his life, and acknowledges that the defendant asserts he has made progress while incarcerated, it submits that the Court cannot condition the safety of other children on a trust that the defendant simply has not earned.

### D. Conclusion

For the reasons set forth above, the Government submits that the Court impose a sentence greater than the mandatory minimum, but below the Guidelines ranges, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Elinor L. Tarlow
Assistant United States Attorney
(212) 637-1036

cc: Sabrina Schroff, Esq. (by CM/ECF)
    Annalisa Mirón, Esq. (by CM/ECF)