Iaanzars

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        18 Cr. 177 (JMF)

5    SHMUEL ZARZAR,

6                   Defendant.          Sentence

7    ------------------------------x

8                                       New York, New York
                                        October 10, 2018
9                                       3:45 p.m.

10

     Before:
11
                         HON. JESSE M. FURMAN,
12
                                        District Judge
13

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  ELINOR L. TARLOW
17        Assistant United States Attorney

18   SABRINA SHROFF
          Attorney for Defendant
19

20

21

22

23

24

25

1    (Case called)

2    MS. TARLOW:  Good afternoon, your Honor.  Elinor

3  Tarlow, for the government.

4    THE COURT:  Good afternoon, Ms. Tarlow.

5    MS. SHROFF:  Good afternoon, your Honor.

6    On behalf of Mr. Zarzar, Federal Defenders of New

7  York, by Sabrina Shroff.  I am standing up for my colleague

8  Annalisa Miron, who is out of the office on extended leave.

9    THE COURT:  Good afternoon to you.

10    Good afternoon, Mr. Zarzar.

11    THE DEFENDANT:  Good afternoon.

12    THE COURT:  We are here for purposes of sentencing.

13  In preparation for today's proceeding, I have reviewed the

14  presentence report, dated September 17, 2018.

15    I have also received and reviewed the following

16  additional submissions:  The defendant's submission dated

17  September 27, 2018, as well as the attachments to that

18  submission, including a forensic psychological report and

19  letter from, I think it's a Dr. Termini, a letter from a

20  licensed social worker at Federal Defenders, a letter from the

21  defendant, letters from various family members, including his

22  mother, grandmother, and siblings, and a letter from a former

23  employer; and the government's submission dated October 3,

24  2018.

25    Have the parties received unredacted versions and

1   copies of each of the other's submissions.

2           MS. TARLOW:  Yes, your Honor.

3           MS. SHROFF:  Yes, your Honor.

4           THE COURT:  All right.  Are there any additional

5   submissions that I should have received?

6           MS. TARLOW:  Not from the government, your Honor.

7           THE COURT:  Anything else?

8           MS. SHROFF:  No, your Honor.  But I was just told a

9   couple of minutes ago that the government intends to have a

10  person speak at sentencing, and I would ask the Court to allow

11  me to be heard on that right now.

12          THE COURT:  OK.  Well, that's a separate matter that

13  we'll get to in a moment.  But there are no other

14  submissions --

15          MS. SHROFF:  No.

16          THE COURT:  -- for present purposes?

17          Let me comment on the proposed redactions for a

18  moment.

19          Two things.  One is a fairly technical one.

20  Ms. Shroff, I don't know if you're the one who prepared the

21  redactions, and this may be just because of the way in which I

22  handle things and read things, but the way that your office I

23  think routinely does this and uses the redaction tool on Adobe

24  to highlight the portions that have been redacted in the

25  publicly filed version, the problem is that is not consistent

4

Iaanzars

1  with my rules, and it doesn't actually enable me to view them

2  very easily.  So I would ask that you get the word out in your

3  office to make sure that you actually do look at my rules and

4  follow them; namely, by submitting it with the highlighter tool

5  rather than the redaction tool and that you do that without my

6  staff having to follow up and request it from you, just to make

7  sure that I can review things in a timely fashion.

8          All right?

9          MS. SHROFF:  Yes, your Honor.

10         THE COURT:  All right.  Now, more immediately and

11  perhaps substantively, I don't think that the vast majority of

12  the proposed redactions are proper.  As I understand it, I

13  mean, the vast majority of them pertain to the defendant's

14  history of drug use and drug abuse, and I think that is sort of

15  the central argument that is being made for leniency here, at

16  least one of the principal ones.  In that regard I think the

17  interest in public disclosure outweighs any privacy interest of

18  the defendant with respect to that.

19         So, to the extent that you have redacted information

20  concerning his history of drug use, I think it should be

21  unredacted.  There's other material, obviously addresses of

22  those who sent the letters, and then some information

23  concerning Mr. Zarzar's family history and background that I

24  think would be appropriate to keep redacted because there are

25  privacy interests of third parties involved there and then the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Iaanzars

1   names, for example, of the entities where his former employer

2   has worked or does work.  Those I think can remain redacted,

3   but the drug use information I think should be unredacted.

4          So if by let's say Monday you can revise your

5   redactions and submit them in accordance with my rules and in

6   highlighted fashion to indicate what remains redacted, I will

7   take a look at it.  If I have any problem with what you have

8   resubmitted, I will let you know.  But hopefully you can adhere

9   to what I just described as the dividing line.

10         All right?

11         MS. SHROFF:  Sure.

12         THE COURT:  Thank you.

13         All right.  Ms. Tarlow, I was going to ask if the

14  government has advised any victim of rights under the Crime

15  Victim Rights Act and if there was anyone present here on

16  behalf of the victim or victim him or herself.  Perhaps that

17  gets to the issue that Ms. Shroff alluded to a moment ago.

18         So?

19         MS. TARLOW:  Yes, your Honor, there are two family

20  members of the victim present in the courtroom today.  One of

21  them may want to speak at a later point at sentencing.

22         THE COURT:  All right.  Ms. Shroff?

23         MS. SHROFF:  Is that notice?  Do you want me to

24  address the argument, your Honor?

25         THE COURT:  With respect to whether they should be

Iaanzars

1   allowed to speak or --

2           MS. SHROFF:  Yes, your Honor.

3           THE COURT:  Sure.  Why not.

4           MS. SHROFF:  I don't mean to be disrespectful to

5   anybody who is in the audience.  Did you want me to do it at

6   sidebar?

7           THE COURT:  I don't know what you're planning to say.

8   I would think that it's really a legal question.

9           MS. SHROFF:  That's correct, your Honor.

10          THE COURT:  In that regard I would think that you

11  could state it in open court, but go ahead.

12          MS. SHROFF:  Your Honor, I literally learned of this

13  less than two minutes ago, but I do not believe that the

14  individuals being proffered to the Court properly fall within

15  the definitional section of 18 U.S.C.3771.  The definitional

16  section or the authorizing section defines the victim as

17  somebody who's directly and proximately harmed by the committed

18  conduct.  The committed conduct here, the conduct that

19  Mr. Zarzar pled to and as reflected in the PSR is the receipt

20  of child pornography.

21          For that particular conduct and for that particular

22  crime, the victim in this case whose parents are in court was

23  not, in fact, contacted.  The victim was never asked for a

24  photograph, and the victim was never proximately or directly

25  impacted by this conduct.

Iaanzars

1    By the time that Mr. Zarzar requested any attempted

2  receipt or photographs, the person that was being contacted by

3  Mr. Zarzar was not in fact a 12-year-old but the undercover

4  officer.  For that reason, the victim who is directly and

5  proximately impacted is not the person whose parents are in

6  court.

7    Additionally, your Honor, if I could ask the Court to

8  take a look at the final PSR, which contains the recommendation

9  section, specifically paragraph 14.  The probation officer, who

10  is a very experienced probation officer in this case, Mr. Ross

11  Kapitansky, had more than one effort at having reached out and

12  was told that, and I quote, that his daughter had learned a

13  lesson and was not terribly impacted by text exchanges.  That

14  was the conduct to which she was subject, since that is not the

15  conduct to which Mr. Zarzar pled, again, the parents are not

16  properly within the definitional section of the crime victims

17  act.

18    THE COURT:  Ms. Tarlow, your response and your

19  thoughts.

20    MS. TARLOW:  Yes, your Honor.

21    This is the first I am hearing of this argument, but

22  at first blush I would say this may be a moot matter.  I don't

23  know again if the family member would like to speak.  If the

24  family member does want to speak, I would just note for your

25  Honor that, although paragraph 14 says the victim was not

1    terribly impacted, there was, of course, some impact as we have

2    alleged in our --

3         THE COURT:  Let me put that argument to the side.  I

4    think that paragraph doesn't cut either way with respect to

5    whether anyone who wishes to speak should be allowed to speak

6    or has a right to speak.  I think the more salient question is

7    whether the parents have a right to speak under the Crime

8    Victim Rights Act.

9         On that I confess I don't know the law insofar as by

10   the time the actual criminal offense was committed here the

11   person involved on the other end was not actually the minor any

12   longer, but an undercover.  Having said that, the defendant

13   believed that person would be the minor, and in that regard was

14   sort of the intended victim.  I just don't know what the law is

15   on that.

16        So, my concern is that to comply with the law, the

17   parents may have the right to speak, and in that regard I would

18   be committing error if I don't let them; but if they don't have

19   the right to speak, I might be committing error to let them

20   speak.  Maybe we should find out if they wish to, and then we

21   can find out whether it's necessary to drill down and get to

22   the bottom of that, in which case we can discuss how to do

23   that.

24        MS. TARLOW:  Yes, your Honor.

25        May I have a moment?

Iaanzars

1          THE COURT:  You may.

2          (Pause)

3          MS. TARLOW:  After conferring with the family member

4    of the victim, they have decided not to speak.

5          THE COURT:  Then it's a moot point, and we can proceed

6    from there.

7          All right.  I do want to make clear if this changes

8    anything you can let Ms. Tarlow know and signal somehow.  I'm

9    prepared to figure out whether you do have the right to speak.

10   In that regard if you do want to speak, I don't want you to be

11   deterred by the discussion that just happened.

12         There are just different rights at stake here, and I

13   want to make sure I both get them right and strike the right

14   balance to the extent I even have discretion in the matter.

15   The bottom line is I'm happy to look into it if there's any

16   interest, but if there isn't I think we can proceed.

17         Ms. Shroff?

18         MS. SHROFF:  Your Honor, our argument was last minute

19   only because we learned two minutes ago.  Obviously, if the

20   Court thinks the sentencing should be adjourned so that

21   everybody has time, we have no objection.  But it's not an

22   argument I knew of.  I only learned of this literally two

23   minutes before.

24         THE COURT:  I understand, and I do not fault you for

25   that.  For that matter I don't know if Ms. Tarlow knew

Iaanzars

1  beforehand that this might be an issue, but suffice it to say I

2  would be prepared to adjourn if the gentleman here did wish to

3  speak in order to figure out whether that is the right course

4  of action, and that's more or less what I was saying a moment

5  ago.  But, absent an indication that there is a desire to

6  speak, I think we can proceed today.

7            So, for now, I will at least assume that we can

8  proceed.

9            On that score, Ms. Shroff, have you read the

10 presentence report?

11           MS. SHROFF:  I read the presentence report, your

12 Honor, both the draft and the final version.

13           THE COURT:  Have you discussed it with Mr. Zarzar?

14           MS. SHROFF:  I have.

15           THE COURT:  Mr. Zarzar, have you read the presentence

16 report?

17           THE DEFENDANT:  Yes, I have.

18           THE COURT:  Have you discussed it with your lawyers?

19           THE DEFENDANT:  I have.

20           THE COURT:  Did you have enough time to go over the

21 report with them, to discuss any mistakes in the report and

22 anything that you would wish to bring to my attention in

23 connection with your sentencing?

24           THE DEFENDANT:  I have.

25           THE COURT:  Keep your voice up, please, so that we can

Iaanzars

1  all hear you.

2          Ms. Shroff, putting aside the guidelines for a moment,

3  any objections to the factual accuracy of the presentence

4  report?

5          MS. SHROFF:  No, your Honor.

6          THE COURT:  Ms. Tarlow, have you reviewed the

7  presentence report?

8          MS. TARLOW:  Yes, your Honor.

9          THE COURT:  Any objections to the factual accuracy of

10  the report?

11          MS. TARLOW:  No, your Honor.

12          THE COURT:  Hearing no objections, I will adopt the

13  factual recitations set forth in the presentence report, which

14  will be made part of the record in this matter and kept under

15  seal.  If an appeal is taken, counsel on appeal may have access

16  to the sealed report without further application to me.

17          As counsel know, I'm not bound by the sentencing

18  guidelines, but I do have to consider the applicable guidelines

19  range, and I must accurately calculate that range in the first

20  instance.  Here the parties entered a stipulation with respect

21  to the calculation of the guidelines range.  Am I correct that

22  the probation department's calculation is consistent with the

23  parties' calculation?

24          MS. TARLOW:  Yes, your Honor.

25          MS. SHROFF:  Yes, your Honor.

Iaanzars

1    THE COURT:  So, based on the parties' agreement, and

2  the absence of any objection and my own independent evaluation

3  of the sentencing guidelines, I accept and adopt the guidelines

4  calculation set forth in the presentence report.  That is,

5  using the November 2016 edition of the guidelines, I find that

6  the total offense level is 31, the criminal history category is

7  I, the guidelines range is 108 to 135 months' imprisonment, and

8  the fine range is 30,000 to 250,000 dollars.

9    In the plea agreement, both sides agreed not to seek a

10  departure from the guidelines sentence and guidelines range, is

11  that correct?

12    MS. TARLOW:  Yes, your Honor.

13    MS. SHROFF:  Yes, your Honor.

14    THE COURT:  I have, nevertheless, considered whether

15  there is an appropriate basis for a departure that is distinct

16  from what has come to be known as variance pursuant to Section

17  3553(a), and I do not find that there are grounds for a

18  departure.

19    Having settled all that, I will hear first from the

20  government and then from Ms. Shroff and from Mr. Zarzar if he

21  wishes to say anything and before proceeding to sentencing.

22    Ms. Tarlow.

23    MS. TARLOW:  Yes, your Honor.

24    For the reasons set forth in our submission, we submit

25  that a sentence above the mandatory minimum and a significant

1  term of imprisonment would be appropriate in this matter,

2  primarily to reflect the seriousness of the defendant's offense

3  and to afford adequate deterrence to other individuals who are

4  similarly situated.

5        First, with respect to the defendant's offense conduct

6  in this matter, as your Honor is aware, the defendant

7  repeatedly sent messages to an undercover law enforcement

8  office who was assuming the identity of the victim for

9  photographs in which the victim would be, quote, basically

10  naked because they were, quote, going to see each other naked

11  anyways.

12        The defendant directed the victim to lift up her shirt

13  to show him her belly.  When the undercover official refused,

14  acting as the victim, the defendant continued to request those

15  photographs, stating that the victim would be, quote, in such

16  trouble if you go to sleep without sending me the pic.

17        But the defendant didn't just attempt to possess child

18  pornography, and he didn't just engage in mere communications

19  behind the safety of a computer or phone.  The defendant

20  discussed engaging in sexual activities with a 12-year-old

21  child who lived in his neighborhood or who he believed was a

22  12-year-old child who lived in his neighborhood, and he took

23  concrete actions.  He persistently told the victim and the

24  undercover official that he wanted to meet in person.  Despite

25  the refusals, the defendant actually went to the victim's

1  school, where he waited outside for several hours and was

2  observed doing so by law enforcement officials.

3        He attempted to give the victim a phone so that his

4  conversations could not be detected by her parents.  When the

5  defendant did not see the victim at her school where he had

6  placed the phone, he then asked to meet her at her home.

7        Despite the undercover's refusals to provide the

8  defendant with the victim's home address, the defendant said

9  that he then searched online and found the victim's home

10  address.  When the victim finally agreed to meet with the

11  defendant, again, the undercover official acting as the victim,

12  the defendant described explicit sexual interactions that he

13  wanted to have, and he expressed pleasure at the thought that

14  he would be the first individual to engage in such conduct with

15  the victim.

16        He then traveled from Brooklyn to Manhattan in order

17  to meet with the victim, presumably to engage in the sexual

18  activities that he had discussed with her a few days earlier.

19  That conduct spanned several months, despite the defendant

20  knowing that his victim was a minor or believing that she was a

21  minor, that she was 12 years old, and his actions were not the

22  product of rash decision making or a momentary lapse in

23  judgment.  They constituted a sustained pattern of conduct over

24  several months, during which time, as I just said, he was able

25  to have a cell phone, devise a plan to provide the victim with

1    a cell phone and research and find the victim's home address.

2          For that entire period he never disengaged, he never

3    had a moment of clarity of the inappropriateness of his

4    actions.

5          With respect to general deterrence, as your Honor is

6    well aware these kinds of crimes have very long lasting and

7    devastating effect on their victims.  Although law enforcement

8    intervened before the defendant had any sexual conduct with an

9    actual victim, he did pose a significant threat to her.  I

10   mentioned he stood outside of her school for several hours.  He

11   encouraged the victim -- and this was when he was actually

12   speaking to the 12-year-old -- to attempt to conceal her

13   conduct by encouraging her disobey her parent's instructions to

14   avoid strangers and by suggesting that the victim use a

15   different phone to communicate with him.

16         Very briefly, just to respond to a few of the

17   defendant's points noting reasons for judicial leniency, as we

18   stated in our submission, we don't believe that the defendant's

19   abuse of narcotics means that the defendant is any less

20   culpable or in any way justifies his conduct.

21         The actions that he took endangered the welfare of a

22   12-year-old child who lived in his neighborhood.  He knew where

23   the child went to school.  He waited outside the victim's

24   school.  He took steps to determine where the victim lived.  He

25   attempted to have the victim send pornographic images to him,

Iaanzars

1    and he discussed sexual activities that he intended to engage

2    in with the victim.

3            There is a real danger that the defendant may return

4    to using substances upon his release, and he may return to

5    similar conduct.  Over the last five years he struggled with

6    addiction.  He's been arrested on four occasions for narcotics

7    offenses.  Some of those are pending.

8            During that period he cycled through medical

9    treatment.  He recognized at one point in time the seriousness

10   of his substance abuse issues, he attempted to detox on his

11   own, but he failed, and he returned to abusing substances.  As

12   he noted in his submission, when his insurance lapsed, he then

13   increased his intake of opiates and turned to using heroin.

14           Just as a final point, the defendant claims that he

15   would not return to conduct similar to the instant offense.

16           I just want to highlight for your Honor, as we did in

17   our submission, that the Dr. Termini concluded that the

18   defendant "is not sexually attracted to minors aged 13 or

19   younger, but has a primary attraction to females aged 14 to

20   17."

21           The government is troubled by that fact for a variety

22   of reasons, including if the defendant returns to using

23   substances that he might be susceptible to acting on those

24   attractions.  Your Honor, for all those reasons, we suggest

25   that a sentence, a significant term of imprisonment above the

Iaanzars

1   mandatory minimum would be appropriate in this matter.

2          THE COURT:  Let me ask a couple of specific questions

3   if I might.

4          First, notwithstanding what you just said, I take it

5   from your sentencing submission that you do believe that a

6   below-guidelines sentence would not be inappropriate or would

7   be unreasonable, is that correct?

8          MS. TARLOW:  Yes, your Honor.  We primarily based our

9   determination on the fact that there is no charged conduct of

10  similar type of offenses.  The government did a review of the

11  defendant's e-mail account and did not find evidence of any

12  kind of similar conduct, including possession of child

13  pornography or enticement of minors, as well as the defendant's

14  characteristics and history prior to abusing narcotics and his

15  childhood and own record.

16         THE COURT:  Do you want to respond to the defendant's

17  arguments with respect to the guidelines here?

18         Obviously, the guideline has been the subject of some

19  judicial attention and criticism, but I don't know whether or

20  to what extent that applies in this particular case.

21         MS. TARLOW:  Right.  We don't take a position as a

22  general matter with respect to the appropriateness of the

23  guidelines for these types of crimes.

24         THE COURT:  All right.

25         Then two other questions.  Paragraph 31 of the

Iaanzars

1  presentence report, which pertains to a prior conviction,

2  indicates that the defendant was found to be in possession of

3  not just drugs on that occasion, but various police

4  paraphernalia.

5          Do you know what the story is with that?

6          MS. TARLOW:  I don't, your Honor.  I don't have

7  additional context to that offense.

8          THE COURT:  Lastly, I am not sure how much or whether

9  this even matters, but was the girl involved in the first

10  instance, was she actually 12?  I know that the defendant

11  claims that she initially said she was 17.  Do you know what

12  her true age is or was at the time?

13          MS. TARLOW:  She was 12 years old, your Honor.

14          THE COURT:  All right.  Thank you.

15          Ms. Shroff, I've read all of your submissions,

16  including the forensic psychological report and letters, so you

17  don't need to repeat what you have already told me, but give me

18  your thoughts.

19          MS. SHROFF:  So I just want to correct or at least

20  amplify one argument that the government made, that they were

21  disturbed by what Mr. Zarzar told Dr. Termini.  If the Court

22  could take just take a look at page 14 of Dr. Termini's report.

23          THE COURT:  Could you keep your voice up and speak

24  into the microphone, please.

25          MS. SHROFF:  Sure.

1      It's Exhibit A.  I just want to make sure -- because

2  the government did not quote Dr. Termini in her entirety -- the

3  Court has what she says.  "The objective results of

4  psychosocial testing reveal that Mr. Zarzar is not sexually

5  attracted to minors aged 13 or younger.  He has a primary

6  attraction to females aged 14 to 17, followed by adult females,

7  which is a normal profile for a heterosexual male, and may be

8  reflective of the age group that he is emotionally best able to

9  identify with."

10      That is the entirety of the text that Dr. Termini

11  wrote for the government, the defense, and the Court.  So it

12  would be inaccurate for the government to be troubled by

13  Mr. Zarzar's very truthful statement to the doctor who was

14  evaluating him, because he falls squarely within the normal

15  psychological profile.  Although none of us may want to have

16  that profile front and center, as Dr. Termini notes that is a

17  normal profile and he does not fall in an aberrant range.

18      THE COURT:  You are telling me that it is a normal

19  profile for somebody in his 30s to be attracted to 14-year-old

20  girls?

21      MS. SHROFF:  I am not saying that.  I'm telling you

22  what Dr. Termini said, and what Dr. Termini says is that that

23  would be a normal profile for somebody if he were -- I think

24  what she's saying is that it falls within the normal range of

25  when an average group of men are tested, and that's what their

1  reflexes say.  So he would fall within the norm.

2         I'm not suggesting to you that that is what Mr. Zarzar

3  actually feels or what Mr. Zarzar would actually act on.  I

4  think what Dr. Termini is saying is if she administered the

5  test to a hundred people of the same age group, that's the test

6  result, and that is what it would show.  That is what I am

7  trying to say.

8         THE COURT:  All right.  Go ahead.

9         MS. SHROFF:  I also want to take a step back and

10 explain to the Court that Mr. Zarzar does not in any way say

11 he's not responsible for his conduct because of his addiction.

12 I don't think that Mr. Zarzar has ever said that in his

13 letters, and certainly not in the submission that has been set

14 forth to the Court.

15        Government counsel did make a statement recently when

16 they said that Mr. Zarzar did not have a moment of clarity.

17 That is in fact true.  He didn't have a moment of clarity.  If

18 you walk back not just in terms of the offense conduct in this

19 case but also walk into back into Mr. Zarzar's chronological

20 life, it is truly unfortunate.  It's a confluence of some very

21 unfortunate events that bring him before you today.

22        As the government said, there's nothing in his past,

23 not on his computers, not on his e-mail, not in his home,

24 nowhere is there any indication of this very aberrant conduct.

25 Nothing.

1    He does not have pornography on any of his devices.

2  He had a terrible, terrible break.  The break was precipitated

3  by so many things that were going on for him.  There is no

4  doubt he had a horrible childhood.  That is compounded by the

5  lack of intervention, and unfortunately many a parent who says

6  a child will grow out of it.

7    He gets his life together.  He has a girlfriend.  He

8  finally gets a job.  He finally gets into a union.  Through no

9  fault of his, he's literally in an accident, an accident that

10  completely annihilates almost everything that could have gone

11  right for him.

12    This is not a man who turned to drugs because he was

13  weak.  This is not a person who went and got high because it

14  was fun.  This is a person about whom books are written now,

15  movies are made, the terrible opioid addiction.  The addiction

16  is just as bad when it's a defendant who's before you as

17  opposed to, you know, the person to whom that opioid is being

18  sold, and when I stand next to the person who sold it.

19    Mr. Zarzar, it's really unfortunate that he was hit in

20  an accident, that he did get prescribed opioids, and for

21  whatever inherent weakness he has, he could not deal with his

22  pain without this continued addiction on drugs.

23    That's what brought Mr. Zarzar to almost the brink.

24  Even through all that period he never did anything remotely

25  reflecting the conduct in this case.  I think he truly snapped

1    when he saw the woman that he loved, whom he broke up with

2    because he could no longer support her and he thought he was so

3    far gone that it would be unfair to keep him engaged to him,

4    with another man.

5         Also, the conduct, how this conduct starts, he doesn't

6    go looking for a young girl.  It happens upon him.  Should he

7    have exercised better judgment?  Absolutely.  Should he have

8    stopped when he figured out she was 12 and not 17 as she said?

9    Of course.  Does it lessen his conduct that all of these bad

10   things happened to him?  No.

11        But that's why he pled guilty, and that's why he has a

12   mandatory minimum of 60 months.  60 months is not a short

13   sentence.  60 months is not an insignificant sentence.

14        But, look, the government is an advocate for its

15   position.  I am certainly hopefully an advocate for Mr. Zarzar.

16        The only objective person in this room other than this

17   Court is the probation officer.  The probation officer here,

18   Mr. Ross Kapitansky, is a seasoned, thoughtful probation

19   officer.  I reread his recommendation section several times,

20   and he recommends a 60-month sentence here.

21        He did not find Mr. Zarzar to be excusing his conduct.

22   He did not say Mr. Zarzar was pretending or malingering.  He

23   did not say Mr. Zarzar deserves no time.  If the Court will

24   recall your own experience with Mr. Kapitansky -- I certainly

25   recall mine -- he is certainly a middle-of-the-road probation

Iaanzars

1   officer.  His recommendation should count far more than my

2   advocacy.  His recommendation was for 60 months.  I ask the

3   Court to focus on the reasons why Mr. Kapitansky recommended

4   such a sentence.

5        I just want to say one final word about Mr. Zarzar.  I

6   do not know him well because I'm standing up for my colleague,

7   but Mr. Zarzar has made a concerted effort to show the Court

8   that he is a different person.  MCC is full of drugs; Valhalla

9   is full of drugs.  He has not once relapsed.  He has worked

10  with the pretrial and with the paralegal in our office who's

11  here in Court today.  He's worked with the social worker who

12  works not just with him but also works with his family, because

13  the only way to confront addiction is to work with those who

14  are supporting Mr. Zarzar, and that includes his mother, who,

15  as the probation officer notes, did not fully realize the depth

16  of his addiction, and we're hopeful that she will continue

17  working with Mr. Angel Vasquez, who is the social worker, and

18  she will be well prepared over the next four years to help

19  Mr. Zarzar when he's released.

20       He's not making a promise to you that nothing will go

21  wrong.  I think he has worked really hard to show you that he

22  is serious about changing and that he's serious about staying

23  sober.  If there's one thing that is clear from his profile, it

24  is that in the 31 years he has been here, this is the only time

25  he has ever engaged in this type of conduct.

1          The government routinely falls back on other evidence

2     to support what they think is a person's proclivity.  If you

3     fall back on it in this case, you will see there is none.  I do

4     not think Mr. Zarzar will ever repeat this conduct because I do

5     not think he would have done it but for the very bad space that

6     he was in, and I do believe that he will have moments of

7     clarity upon his release.

8          60 months is a long time, your Honor, and I ask you to

9     impose the sentence recommended by the department of probation

10    in this case, with the concomitant five years of supervised

11    release, which will ensure supervision, which will ensure that

12    it comports and that it complies.

13         Finally, he will be required to register as a sex

14    offender.  That registration will also severely curtail all of

15    his freedoms and certainly give him a deep, deep amount of

16    supervision.

17         I know I've spoken a little bit too long, but thank

18    you.

19         THE COURT:  Thank you, Ms. Shroff.

20         Mr. Zarzar, is there anything that you wish to say

21    before I sentence you?

22         THE DEFENDANT:  Yes.  Should I stand?

23         THE COURT:  Why don't you stay seated so that you can

24    speak into the microphone please.  Just speak loudly and

25    clearly and slowly.

Iaanzars

1          THE DEFENDANT:  I just want you to know that the

2     person that's sitting here today, I still look back at these

3     charges that are brought and I can't understand how I -- I am

4     not the same person who was charged with these charges.

5          My entire life I have been through many things, but I

6     never -- I was always a person who was trying hard, always

7     trying to achieve, to aspire to do something, to be someone to

8     do something, to work to become more and better and better than

9     what I am.

10          Getting into drugs was something that I never in my

11     life ever thought would happen to me.  I look at the picture

12     that -- today was the first time I saw the picture of what I

13     looked like when he got arrested in color.  And I'm sorry, but

14     it's just -- I can't -- I can't -- it just doesn't register in

15     my head.

16          I have been locked up now for ten months now.  I have

17     been locked up and I have been nonstop trying to just be back

18     trying to be a normal person again, a person who's not

19     addicted, a person who is not doing things that are not, that

20     are not normal to do.

21          As soon as I got myself healthy again, I got a job in

22     MCC.  I started working in the kitchen.  I took courses in the

23     educational department to occupy my other time, took a course

24     working as a -- what do you call it?  A suicide watch inmate

25     companion, to help other people, to keep myself busy.  I wanted

Iaanzars

1  to do work as an electrician in MCC because that's what I'm

2  good at, but that wasn't available for some reason pretrial.

3         Every day I wake up and I make sure that I will not in

4  any chance have any opportunity to get into a position where I

5  will use drugs, even though there is drugs around me.  I know

6  that I did something wrong and I'm not making excuses for it,

7  and I know that I need to be punished.

8         Moving forward I just want to be a better person and

9  make sure that I stay out of this kind of trouble again, stay

10  away from drugs.  Unfortunately in the Jewish community being

11  addicted to drugs is a very taboo subject.  It is something

12  that nobody wants to address.

13         Hopefully one day after I get out and I get my life

14  back on track and I become a productive member of society once

15  again I can maybe try to make a difference in that, because

16  what I went through is not something that I would wish on my

17  worst enemy.

18         I hope that I can help make one day, if possible,

19  after I help myself, now that I am going to be doing time, I am

20  going to be taking whatever programs I can take to help myself

21  stay and better myself and not get into a position where drugs

22  become an issue for me again.  I am aware that even taking -- I

23  know that taking RDAP isn't going to get me a time reduction.

24  I'm still going to do it just so I can help myself.

25         THE COURT:  All right.  Thank you very much,

Iaanzars

1    Mr. Zarzar.

2          I want to just give the gentleman who is here an

3    opportunity to indicate if he has reconsidered and would like

4    to address me, in which case I'm prepared to adjourn.

5    Otherwise, I'm prepared to proceed.

6          All right.  He's shaking his head no, so I will

7    proceed.

8          Counsel, is there any reason why sentence should not

9    be imposed at this time?

10         MS. TARLOW:  No, your Honor.

11         MS. SHROFF:  No, your Honor.

12         THE COURT:  In imposing sentence I'm required to

13   consider the factors set forth in Title 18, United States Code,

14   Section 3553(a).

15         In the interest of time, I am not going to recite them

16   at length, but suffice it to say that I have and will consider

17   all of them, including the sentencing guidelines range, which I

18   have found to be 108 to 135 months' imprisonment, and the

19   purposes of sentencing set forth in subsection (a)(2) of the

20   statute.  Ultimately, I'm required to impose a sentence that is

21   sufficient, but no greater than necessary to comply with the

22   purposes of sentencing set forth in subsection (2) of the

23   statute.

24         Now, like the government, I do think that there are

25   reasons to vary from the guidelines range and impose a

1  below-guidelines range here.  Those include the defendant's

2  history and characteristics, including what was clearly a very

3  difficult childhood and to some extent the history of the

4  mental health and substance abuse problems.

5          I also think that the steps that Mr. Zarzar has taken

6  while in custody are commendable.  I commend you for taking

7  them and trying to get your life back on track in the ways that

8  you've described.  Even if, for example, you don't qualify for

9  credit through the RDAP program, I think it certainly is in

10 your interest to pursue any and all opportunities of that sort

11 that are presented to you.

12         Having said that, I do think a substantial sentence is

13 warranted here for a number of reasons.  The offense here and

14 the offense conduct is, to use the probation officer's term,

15 vile and despicable.  I don't think anybody should think

16 otherwise.  Nor was it a single solitary act.  It was conduct

17 that took place over a two-month period that involved a fair

18 bit of planning and calculation.  That includes the effort to

19 get the victim a phone, to track down her home address, and to

20 take steps to locate her and really stalk her.

21         At the end of the day, we are talking about a

22 12-year-old girl.  I don't know whether she in person looks

23 closer to 17 in a way that might have given the defendant some

24 reason to believe that claim initially, but certainly he

25 harbored no illusions about her age during the course of the

1    conduct that I just described, and that is abhorrent behavior

2    and behavior that warrants substantial punishment.

3            On top of that, I do recognize the portion of the

4    sentence that Ms. Tarlow omitted when she referenced the

5    apportionment of the forensic report, but I have to say that I

6    too was struck by the fact that a report commissioned and

7    submitted by the defendant himself stated that his primary

8    attraction was to 14 to 17-year-old girls.

9            I don't know if that's normal.  It doesn't strike me

10   as normal, but in a case involving a person who sought to

11   entice a minor to engage in sexual acts in fairly egregious and

12   explicit ways, that strikes me as a major concern.

13           It is not only unlawful, but it is despicable to prey

14   upon girls of the age of 14.  I am just not willing to take the

15   chance that based on Mr. Zarzar's own attraction the defense

16   letter says that Mr. Zarzar is "no threat to break the law

17   again"  When push comes to shove, I am just not quite as

18   optimistic about that.  I sure hope that is right.

19           I hope that he gets the drug treatment that he so

20   sorely needs, that he gets the mental health treatment that he

21   also clearly needs.  Indeed, in that regard I note that some of

22   his behavioral problems predate the 2012 accident by a number

23   of years.  Indeed, they go back to second grade as far as I can

24   tell from the presentence report, but the bottom line is I

25   think there is a significant danger of relapse, and in that

Iaanzars

1  regard the need for both specific deterrence and a need to

2  protect the public from further crimes of the defendant.

3         I hope that this is aberrant behavior, but the fact of

4  the matter is I am just not willing to take the chance that it

5  is, and there are reasons to be concerned.

6         So I will state the sentence that I intend to impose

7  and would ask you, Mr. Zarzar, to please rise.

8         Mr. Zarzar, it is the judgment of this Court that you

9  are remanded to the custody of the Bureau of Prisons for a

10 period of 84 months, that is seven years, to be followed by a

11 period of five years of supervised release.

12        During your term of supervised release, you will be

13 subject to the following mandatory conditions:

14        You shall not commit another federal, state or local

15 crime.

16        You shall not illegally possess a controlled

17 substance.

18        You shall refrain from any unlawful use of a

19 controlled substance and submit to one drug test within 15 days

20 of your release on supervised release and at least two periodic

21 drug tests thereafter as determined by probation.

22        You shall cooperate in the collection of DNA as

23 directed by probation, and you must comply with the

24 requirements of the Sex Offender Registration and Notification

25 Act as directed by the probation officer, the Bureau of

Iaanzars

 1   Prisons, or any state sex offender registration agency in which

 2   you reside or work, are a student, or were convicted of a

 3   qualifying offense.

 4          In addition, the standard conditions of supervised

 5   release set forth in the presentence report and in the judgment

 6   will apply.

 7          Among other things, you shall not possess a firearm or

 8   destructive device, and you shall report to the probation

 9   office in the judicial district where you are authorized to

10   reside within 72 hours of your release from custody.

11          Finally, you must meet the following special

12   conditions:

13          First, you shall participate in an outpatient drug

14   treatment program approved by the United States Probation

15   Office, which program may include testing to determine whether

16   you have reverted to using drugs or alcohol.

17          I authorize the release of available drug treatment

18   evaluations and reports to the substance abuse treatment

19   provider as approved by the probation officer.

20          You shall be required to contribute to the cost of

21   services rendered -- that is, to make a copayment -- in an

22   amount determined by the probation officer based on your

23   ability to pay or the availability of third-party payment.

24          You shall participate in an outpatient mental health

25   program approved by the probation department.

Iaanzars

1          You shall continue to take any prescribed medications

2     unless otherwise instructed by your health care provider.

3          You shall contribute to the cost of services rendered

4     not covered by third-party payment if you have the ability to

5     pay.

6          I authorize the release of available psychological and

7     psychiatric evaluations and reports to your health care

8     provider.

9          You must participate in the computer and Internet

10    monitoring program administered by the United States Probation

11    Office.  You must provide the probation office advance

12    notification of any computer or computers, automated services

13    or connected devices that will be used during your term of

14    supervision and that can access the Internet.

15          The probation office is authorized to install any

16    application as necessary to survey all activity on those

17    computers or connected devices owned or operated by you.  You

18    may be required to pay the cost of monitoring services at the

19    monthly rate provided by the U.S. Probation Office.  The rate

20    and payment schedule are subject to periodic adjustments by the

21    probation office.

22          The probation office shall be notified via electronic

23    transmission of impermissible or suspicious activity or

24    communications occurring on any such computer or connected

25    device.

Iaanzars

1    Consistent with the computer monitoring policy in

2    effect by the probation office, as triggered by impermissible

3    suspicious activity, you must consent to and cooperate with

4    unannounced examinations of any computer equipment owned or

5    used by you.  This examination shall include, but is not

6    limited to, retrieval and copying of all data from the

7    computers, connected devices, storage media, and any internal

8    or external peripherals and may involve removal of such

9    equipment for the purpose of conducting a more thorough

10   inspection.

11   You must not have contact with the victim in this case

12   or any member of her family.  This includes any physical,

13   visual, written, or telephonic contact with those persons.

14   Additionally, you must not directly cause or encourage anyone

15   else to have such contact with the victim or members of her

16   family.

17   You shall submit your person, residence, place of

18   business, vehicle, or any property or electronic device under

19   your control to a search on the basis that the probation

20   officer has a reasonable belief that contraband or evidence of

21   a violation of the conditions of supervised release may be

22   found.  That search must be conducted at a reasonable time and

23   in a reasonable manner.  Failure to submit to a search may be

24   grounds for revocation, and you shall advise any other

25   residents that the premises may be subject to search pursuant

1  to that condition.

2         You shall undergo a sex offense specific evaluation

3  and participate in a sex offender treatment and/or mental

4  health treatment program approved by the probation officer.

5         You shall abide by all rules, requirements, and

6  conditions of the sex offender treatment program, including

7  submission to polygraph testing.

8         You shall waive your right to confidentiality in any

9  records for mental health assessment and treatment imposed as a

10  consequence of this judgment to allow the probation officer to

11  review your course of treatment and progress with the treatment

12  provider.

13         You shall be required to contribute to the cost of

14  services rendered in an amount approved by the probation

15  officer based on your ability to pay or the availability of

16  third-party payment.  And I authorize the release of available

17  psychological and psychiatric evaluations and reports,

18  including the presentence report, to the sex offender treatment

19  provider and/or mental health treatment provider.

20         You shall not have deliberate contact with any child

21  under 18 years of age unless approved by the probation officer.

22         You shall not loiter within 100 feet of schoolyards,

23  playgrounds, arcades, or other places primarily used by

24  children under the age of 18.

25         And you shall be supervised in the district of your

Iaanzars

1   residence.

2        I am not going to impose a fine because I find that

3   you do not have the ability to pay a fine.

4        I am, however, imposing the mandatory special

5   assessment of $100, which shall be due and payable immediately.

6        Does either counsel know of any legal reason why the

7   sentence should not be imposed as stated?

8        MS. TARLOW:  No, your Honor.

9        MS. SHROFF:  I know of no legal reason.

10       THE COURT:  The sentence as stated is imposed.  I find

11  that the sentence is sufficient, but no greater than necessary,

12  to satisfy the sentencing purposes set forth in Section

13  3553(a)(2), including the need to promote respect for the law,

14  to provide just punishment for the offense, to afford adequate

15  deterrence, and to protect the public from further crimes of

16  the defendant.

17       Ms. Shroff, do you have any request with respect to

18  designation recommendation for the Bureau of Prisons?

19       MS. SHROFF:  May I just have a moment, your Honor.

20       THE COURT:  You may.

21       THE DEFENDANT:  Your Honor, may I make a statement,

22  please.

23       THE COURT:  I'm sorry?

24       (Defense counsel and the defendant conferred)

25       MS. SHROFF:  Your Honor, Mr. Zarzar wants to correct a

1   matter.  He would like the Court to know that the statement

2   reflected in Dr. Termini's report is inaccurate, and he wants

3   the Court to know that.

4            THE COURT:  Understood.  You had an opportunity to

5   speak to me and that opportunity, you availed yourself of it.

6   So at this time I am going to say no to that question.

7            Ms. Shroff, any request with respect to a designation

8   location?

9            MS. SHROFF:  He would like to be designated at

10  Otisville, please.

11           THE COURT:  All right.  I will recommend that he be

12  designated to a facility as close to New York City as possible

13  to facilitate the maintenance of ties to his family, and, if

14  appropriate, to Otisville where, among other things, I suspect

15  that the resources and community would provide him with

16  religious opportunities that he might not have elsewhere.

17           Mr. Zarzar, I urge you to take advantage of any and

18  all treatment programs while you are in custody that you can in

19  the way that you described.

20           It's clear to me that you have any number of issues

21  that you need to contend with, and I would urge you to take

22  advantage of whatever is made available to you now.  Certainly

23  when you get out you're obviously required to do so, but I

24  would urge you to take advantage of the resources and support

25  that probation will provide to you and at least some of your

Iaanzars

1  family clearly will provide to you to ensure that you don't

2  backslide, that you do get your life on track in the way that

3  you indicated you would like to so that you don't engage in any

4  sort of conduct of the sort that happened here.

5          You obviously do have talents and strike me as

6  somebody who could contribute to the world in the way that you

7  have been trying while in custody.  I hope that you are able to

8  continue that and put this behind you when you have the

9  opportunity do that.

10         Ms. Tarlow, there are open counts to be dismissed, is

11 that correct?

12         MS. TARLOW:  Yes, your Honor.

13         THE COURT:  They are dismissed at this time.

14         Mr. Zarzar, to the extent that you have not given up

15 your right to appeal either your guilty plea or the plea

16 agreement you entered into in connection with your plea, you

17 have the right to appeal.  Any notice of appeal must be filed

18 within 14 days of the entry of the judgment of conviction.  If

19 you cannot afford to pay the costs of an appeal, you may apply

20 for leave to appeal in forma pauperis.

21         THE COURT:  Anything else, Ms. Tarlow?

22         MS. TARLOW:  No, your Honor.

23         THE COURT:  Ms. Shroff.

24         MS. SHROFF:  May I just have a moment?

25         THE COURT:  You may.

Iaanzars

1          (Defense counsel and the defendant conferred)

2          MS. SHROFF:  No, your Honor.  Thank you.

3          THE COURT:  All right.  In that case I will stay on

4    the bench, but the matter is adjourned.

5          (Adjourned)